**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARSHALL WILLIAM STEWART,

      Plaintiff,

          v.

CERMAK HEALTH SERVICES AT
COOK COUNTY DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.

No. 07 C 6172
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed his one-count second amended complaint alleging violations of his

constitutional rights pursuant to 42 U.S.C. § 1983.  Defendants Tom Dart ("Dart"), Sheriff of

Cook County, Illinois, Salvador Godinez ("Godinez"), Executive Director, Chester Plaxico

("Plaxico"), Superintendent, Dennis Andrews ("Andrews"), Superintendent, and Cook County

(collectively "Defendants") now move to dismiss Plaintiff's second amended complaint on all

counts.  For the following reasons, Defendants' motion is granted in part and denied in part.

**I. STATEMENT OF FACTS**

Plaintiff filed his one-count, second amended complaint alleging violations of his

constitutional rights.  Plaintiff has exhausted the grievance procedure and has been in daily pain

for almost five years.  Plaintiff alleges that Defendants were performing their duties in the

operation of the jail, including assigning bunks, making prescriptions available, permitting

footwear, and permitting medical procedures.  Furthermore, Plaintiff alleges that Defendants

were deliberately indifferent to the risks posed to Plaintiff by denying him medication, assigning

him to a top bunk, denying him proper footwear, denying him the use of a cane, denying him an MRI. Plaintiff contends that such deliberate indifference was a policy.

In June of 2005, Plaintiff injured his Achilles tendon while playing basketball at the Cook County Department of Corrections ("CCDC"). Plaintiff was presented for treatment at Cermak Health Services on June 28, 2005 and reported pain in the lower gastric area. Plaintiff tested positive for a complete rupture of the Achilles tendon. Plaintiff was then transported to the emergency room of Stroger Hospital where he was outfitted with a temporary splint-cast. Plaintiff was ordered to return in one week for either a permanent cast or surgery pending the results of an MRI.

Plaintiff returned to CCDC in a cast from the knee down and used crutches. On July 1, 2005, Plaintiff's doctor wrote an order directing him to use the lower bunk, to wear a splint, and to use crutches. Plaintiff's prescription for a lower bunk was reiterated in orders dated September 9, 2005, October 11, 2005, October 18, 2005, May 10, 2006, September 2006 and January 8, 2008. Despite these orders, Plaintiff was assigned to a cell on an upper floor causing him to walk up approximately twenty steps. Plaintiff was also assigned the top bunk bed in his cell. After two weeks, the splint-cast deteriorated and Plaintiff began the grievance procedure at CCDC, requesting an MRI and Achilles Cadaver Transplant. Plaintiff was also prescribed medication by his doctors, however, CCDC failed to administer it to him.

Plaintiff was re-evaluated four times in 2005. In 2006, Plaintiff was sent to Fantus Health Center for physical therapy and was given an Ankle-Foot Orthotic ("AFO") drop foot brace for his left Achilles to assist with walking and prevent his injury from worsening. CCDC physicians indicated that he should wear a gymshoe with the brace, however, CCDC guards refused to

permit him to wear a gym shoe, instead insisting that he wear a CCDC shower shoe with the brace.

Though doctors recommended that an MRI be performed, CCDC physicians informed Plaintiff that an MRI was costly and could take up to six months for cost approval. Plaintiff returned with complaints of pain and weakness on January 25, 2006 and was re-evaluated many times that year. In 2006, Plaintiff's left calf size was measured and was half the size of the right calf suggesting muscle atrophy. Plaintiff was prescribed anti-inflammatory and pain medication, but it was not administered at regular interviews as prescribed. Plaintiff was denied his prescribed medication for as many as ten weeks at a time.

In 2007, Plaintiff continued the grievance process which resulted in more physical therapy and hospital visits, but not the recommended treatment: an MRI and Achilles Cadaver Transplant. In March 2007, Plaintiff returned to Cermak Health Services and again diagnosed with probable partial Achilles tendon tear. Plaintiff was given a cane to walk with and instructed on how to walk properly so as to prevent further damage to his injury. CCDC guards regularly denied Plaintiff the use of his cane, despite doctors' orders. After three visits to physical therapy, he was informed that there was nothing more that the therapy unit could do for his injury. At some time in 2007, CCDC physicians allowed Plaintiff to have an in-house CT Scan in hopes that Stroger Hospital Orthopedic Surgeons would accept it instead of an MRI. Stroger Hospital did so. The CT Scan revealed an anterior and medial lateral oblique tear of the Achilles tendon about 5-6 cm. In May of 2007, Plaintiff was seen in physical therapy by J. Stopka, and evaluated by Dr. Techy. Dr. Techy reported a gap of about 20 cm above the Achilles insertion on the heel. Plaintiff was unable to stand on tiptoes on the left leg. Dr. Techy placed Plaintiff on a wait list

for reconstructive surgery.  Plaintiff was seen again in July of 2007 and requested permission to wear a gym shoe with his AFO.  On September 10, 2007, Plaintiff saw Dr. Prieto who reported the presence of calf muscle atrophy.  Plaintiff was informed that it was unlikely that his surgery would happen because CCDC detainees are not a priority.  Dr. Prieto described Plaintiff as having a "chronic left complete Achilles tendon tear."

Plaintiff returned to physical therapy in February 2008 and his AFO was altered to be compatible with his shower shoes, as he was never given permission to wear gym shoes. Plaintiff again saw doctors on September 8, 2008 and on October 23, 2008.  Dr. Kepota indicated that Plaintiff would "benefit from a regular shoe."  Plaintiff was seen again in January of 2009, February 26, 2009, May of 2009, and November 19, 2009.  On this last visit, Plaintiff was given three new ICD-10 codes ("internal classification of diseases codes").  Specifically, (1) banding and stretching of the ACL; (2) Trucanter Bursitis (hip pain); and (3) neurological fusion of the spine.  Plaintiff asserts that these new diagnoses were caused by Plaintiff's limp over the past four and a half years.  CCDC guards regularly denied Plaintiff the use of his cane, despite doctor's orders to use it at all times.

On May 3, 2010, Plaintiff was seen by Dr. Simmons who said that he didn't understand why Cook County Jail failed to transport Plaintiff to Stroger Hospital on April 30, 2010 for an MRI; Dr. Simmons showed Plaintiff a written referral for an approved MRI.  Plaintiff was evaluated on May 12, 2010 at Cermak Hospital by a rheumatologist who ordered a CT Scan of Plaintiff's left hip and spine.  The rheumatologist told Plaintiff that he needed surgery.

## II. STANDARD OF REVIEW

A Motion to Dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir.1998). I must take all facts alleged in Plaintiffs' complaint as true and draw all reasonable inferences from those facts in favor of Plaintiffs. *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir.1992). Plaintiffs, for their part, must do more than solely recite the elements for a violation; they must plead with sufficient particularity so that their right to relief is more than mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must plead their facts so that, when accepted as true, they show the plausibility of their claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plaintiffs must do more than plead facts that are "consistent with Defendants' liability" because that only shows the possibility, not the plausibility, of their entitlement to relief. *Id.* (internal quotations omitted).

## III. DISCUSSION

### A. Official Capacity Claims

Defendants argue that Plaintiff has failed to sufficiently claim any official liability against them. A governmental employee cannot be held liable in their official capacities under § 1983 unless a plaintiff can show that he suffered injuries of a constitutional magnitude caused by an official custom, policy or practice. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). A claim against a government official is essentially a claim against the entity that employs him. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A municipality can be liable for violating the rights of a person because of policy in three ways: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that is "so

permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the injury was caused by a person with "final policy making authority." *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). No single allegation of wrongdoing on the part of a defendant is sufficient to establish a policy, custom, or practice. *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir. 1994). Though a plaintiff is not held to a heightened pleading standard, a *Monell* claim must include conclusory language "buttressed by facts alleging wrongdoing." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Defendant argues that Plaintiff has failed to go beyond mere conclusions and does not allege any facts to support the conclusion that Defendants acted with deliberate indifference.

Plaintiff alleges that Defendants Dart, Godinez, Plaxico, and Andrews are responsible for the custom and policy of (1) assigning persons in custody to upper or lower bunks regardless of doctor's orders; (2) directing persons in custody as to what footwear to wear regardless of doctor's orders; (3) administering or failing to administer medications to persons in custody; (4) allowing or not allowing persons in custody to walk with the aid of canes despite doctors' orders; (5) assigning persons in custody to cells on upper or lower floors of the Jail despite the fact that inmates may be wearing casts from the knee down and using crutches; and (6) determining whether or not persons in custody receive medical treatment such as MRIs.

Here, Plaintiff has alleged that his doctors' orders were repeatedly ignored by CCDC staff. Specifically, Plaintiff's complaint alleges that despite doctors' orders, Defendants repeatedly and consistently denied an appropriate bunk bed and shoes, repeatedly denied Plaintiff his pain medication, repeatedly denied Plaintiff the use of a cane, and denied Plaintiff access to an MRI..

6

I find these facts sufficient to "buttress" the conclusory allegations contained in Plaintiff's

complaint.  Defendants' motion to dismiss claims against them in their official capacity is denied.

### B. Individual Claims

The Seventh Circuit has stated that "an individual cannot be held liable in a § 1983 action

unless he caused or participated in an alleged constitutional deprivation.  *Moore v. State of*

*Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).  A successful § 1983 claim requires that a plaintiff

show that a defendant's acts or omissions constitute "deliberate indifference to a serious medical

need."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Furthermore, a plaintiff must demonstrate

that the supervisory official "knowingly, willfully, or at least recklessly caused the alleged

deprivation by his action of his failure to act."  *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir,

1986).  Negligence alone does not constitute a constitutional violation.  *Estelle v. Gamble*, 429

U.S. 97, 106 (1986).  Here, there are no factual allegations to establish that Dart, Godinez,

Plaxico, or Andrews personally participated in the alleged constitutional violations or acted with

deliberate indifference toward Plaintiff.  Accordingly, Defendants are dismissed from this lawsuit

in their individual capacities.

### C. Cook County

Plaintiff joined Cook County as a "joint and indispensable party" pursuant to the Illinois

Tort Immunity Act 745 ILCS 10/9-102.  This portion of the state's Tort Immunity Act provides

that a local public entity must pay any tort judgment or compensatory damages for which it or an

employee, acting within the scope of his employment, is liable.  To the extent that Plaintiff

alleges that Cook County is an indispensable party pursuant to section 9-102, Defendants do not

dispute its inclusion in the complaint.  Accordingly, Cook County will remain a Defendant in this action as a nominal party pursuant to Section 9-102.

### D.  Claims for Punitive Damages

Finally, Defendants argue that all claims for punitive damages against Defendants in their official capacities should be dismissed.  As stated in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), a municipality will not be exposed to punitive damages because of the bad-faith actions of its officials, even from actions brought pursuant to § 1983.  Accordingly, any punitive damages sought against Cook County, by and through Plaintiff's official capacity claims, are dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion is granted as to Plaintiff's individual capacity claims and denied as to Plaintiff's official capacity allegations.  Cook County will remain in this action as a nominal party pursuant to Section 9-102.  Finally, Plaintiff's punitive damages claims are dismissed.

ENTER:

James B. Zagel
United States District Judge

DATE:  October 20, 2010

8